**NATIONAL PAPER & TYPE CO. v. EDWARDS, Collector of Internal Revenue.**

(District Court, S. D. New York. May 26, 1923.)

**Constitutional law ⚖️286—Internal revenue ⚖️2—Income tax not unconstitutional because of inequality as between domestic and foreign corporations.**

The imposition of income taxes under Revenue Act 1918, §§ 230, 233 (Comp. St. Ann. Supp. 1919, §§ 6336⅛nn, 6336⅛p), on a domestic corporation on income derived from the business of selling goods manufactured or acquired in the United States in foreign countries, *held* not unconstitutional, as depriving the corporation of its property without due process of law, because under the law as construed and enforced the income of foreign corporations so derived is not subject to tax.

At Law. Action by the National Paper & Type Company against William H. Edwards, Collector of Internal Revenue for the Second District of New York. On motion by defendant for judgment on the pleadings. Granted.

Lord, Day & Lord, of New York City, for plaintiff.
Wm. Hayward, U. S. Dist. Atty., of New York City, for defendant.

MACK, Circuit Judge: This is a suit to recover the sum of $183,844.14, income and excess-profits taxes assessed against the plaintiff for the fiscal year ending March 31, 1919, under sections 230, 233, and 301 of the Revenue Act of 1918 (Comp. St. Ann. Supp. 1919, §§ 6336⅛nn, 6336⅛p, 6336⁷/₁₆aa),[1] and alleged to have been paid by the plaintiff under protest.

It appears from the complaint that during the year in question the plaintiff was engaged in the business of exporting goods from the United States and of selling such goods in foreign countries. The total gross business of the plaintiff for the period was $6,435,512.69, of

[1] The pertinent parts of the Revenue Act of 1918 here involved are:

Sec. 230. (a) That, in lieu of the taxes imposed by section 10 of the Revenue Act of 1916, as amended by the Revenue Act of 1917, and by section 4 of the Revenue Act of 1917, there shall be levied, collected, and paid for each taxable year upon the net income of every corporation a tax at the following rates:

(1) For the calendar year 1918, 12 per centum of the amount of the net income in excess of the credits provided in section 236; and

(2) For each calendar year thereafter, 10 per centum of such excess amount. ❉ ❉ ❉

Sec. 233. (a) That in the case of a corporation subject to the tax imposed by section 230 the term 'gross income' means the gross income as defined in section 213, except that: ❉ ❉ ❉

(b) In the case of a foreign corporation gross income includes only the gross income from sources within the United States, including the interest on bonds, notes, or other interest-bearing obligations of residents, corporate or otherwise, dividends from resident corporations, and including all amounts received (although paid under a contract for the sale of goods or otherwise) representing profits on the manufacture and disposition of goods within the United States.

Sec. 301. (a) That in lieu of the tax imposed by title II of the Revenue Act of 1917 but in addition to the other taxes imposed by this act, there shall be levied, collected, and paid for the taxable year 1918 upon the net income of every corporation a tax equal to the sum of the following: ❉ ❉ ❉

which amount $6,295,165.87 were sales of goods by the plaintiff in foreign countries after the goods had been exported there, and $158,-346.82 were sales to export commission merchants in this country with the intent and purpose that the goods should be exported and with the result that the goods were actually exported. The validity of the taxes assessed is assailed in the complaint on two grounds: (a) That the taxes are upon exports in violation of article 1, section 9, clause 5, of the Constitution; and (b) that the taxes are unequal, discriminating, and unfair, and in consequence null and void, because the income of foreign corporations engaged ·in exporting goods from the United States is not subject to tax under similar circumstances. The defendant has moved for judgment on the pleadings on the ground that the facts alleged are not sufficient to constitute a cause of action.

In the light of the decision in Peck & Co. v. Lowe, Collector, 247 U. S. 165, 38 Sup. Ct. 432, 62 L. Ed. 1049, in which the Supreme Court held, under the Income Tax Law of 1913, that income of domestic corporations derived from the business of export was within the taxing power of Congress and was not in violation of article 1, section 9, clause 5, of the Constitution, plaintiff in its brief has abandoned its attack on these taxes as in violation of this provision of the Constitution. It now concentrates its attack upon the law on the ground that, as interpreted by the Attorney General (32 Op. Attys. Gen. 336), and as enforced by the Treasury it deprives the plaintiff of property without due process of law in violation of the Fifth Amendment, because it imposes upon the plaintiff's business discriminatory and unequal burdens which are not imposed upon foreign corporations similarly situated.

It is admitted by the government that the acts of 1909 (36 Stat. 11) and 1913 (38 Stat. 166, 172), the wording of which differs slightly from that of the act of 1918, were in practice applied, at least to some extent, to foreign corporations in respect of income derived from the sale in foreign countries of goods manufactured or acquired in the United States.[2] It is unnecessary, however, here to consider the proper interpretation to be given to the acts of 1909 and 1913 or the act of 1918 as applied to foreign corporations, since I am satisfied of the constitutionality of the law as applied to the plaintiff, even though the income of foreign corporations from like sources is construed to be exempt.

There is, as is now conceded, no question as to the power of Congress to tax the net income of domestic corporations derived from their export business. The question as to how far it is wise and proper to extend our taxing laws to foreign corporations that manufacture or acquire goods in this country, and sell them abroad, involves many economic and political considerations. These are peculiarly within the province of Congress, not the courts. It is perhaps inevitable not only that the rate of taxation should vary in different countries, but that

[2] It may be noted in passing that under section 217 (e) of the Revenue Act of 1921 (42 Stat. 245), income from the sale of goods produced in whole or in part within and sold without the United States is to be treated as derived partly from sources without the United States, but that income derived from the purchase of goods within and their sale without the United States is to be treated as derived entirely from the country in which sold.

there should be some laps and some gaps in the adjustment of the revenue laws of the various countries to foreign trade. It may happen for a time that income from some transactions may escape all taxation, while other income may have to bear its tax in more than one country. But a nation that attempts to reach out too far in the direct or indirect taxation of foreign trade may invite retaliation and reprisal. So long as the tax on American corporations is measured by *net* income actually realized, it is difficult to see that the American corporations are seriously handicapped in competing for any particular contracts, even if it could be assumed that foreign competitors were subject to no equivalent taxation by their own governments. Clearly, however, such a handicap or discrimination does not make the classification such a grave abuse or oppression as to condemn the law as a denial of due process within the Fifth Amendment. For to bring it within this condemnation it must be, as the Supreme Court says in Brushaber v. Union Pacific R. R. Co.. 240 U. S. 1, 24, 25, 36 Sup. Ct. 236, 244 (60 L. Ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713):

"A case where although there was a seeming exercise of the taxing power, the act complained of was so arbitrary as to constrain to the conclusion that it was not the exertion of taxation, but a confiscation of property; that is, a taking of the same in violation of the fifth amendment, or, what is equivalent thereto, was so wanting in basis for classification as to produce such a gross and patent inequality as to inevitably lead to the same conclusion."

In La Belle Iron Works v. United States, 256 U. S. 377, 392, 393, 41 Sup. Ct. 528, 532 (65 L. Ed. 998) the court again points out:

"The Fifth Amendment has no equal protection clause, and the only rule of uniformity prescribed with respect to duties, imposts, and excises laid by Congress is the territorial uniformity required by article 1, § 8. * * * The difficulty of adjusting any system of taxation so as to render it precisely equal in its bearing is proverbial, and such nicety is not even required of the states under the equal protection clause, much less of Congress under the more general requirement of due process of law in taxation. * * * The act treats all corporations and partnerships alike, so far as they are similarly circumstanced. * * * If in its application the tax in particular instances may seem to bear upon one corporation more than upon another, this is due to differences in their circumstances, not to any uncertainty or want of generality in the tests applied."

Defendant's motion for judgment on the pleadings is granted.